UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAMMY KRAFT,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 2:15-cv-00337-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On November 29, 2011, plaintiff filed an application for SSI benefits alleging disability as of February 27, 2009. *See* Dkt. 10, Administrative Record ("AR") 12. That application was denied upon initial administrative review on June 6, 2012, and on reconsideration on August 10, 2012. *See id.* A hearing was held before an administrative law judge ("ALJ") on June 4, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See*

ORDER - 1

AR 29-64.

In a decision dated July 24, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 12-22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 15, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 2; 20 C.F.R. § 416.1481. On March 9, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on May 15, 2015. *See* Dkt. 10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings because the ALJ erred: (1) in evaluating the opinions of treating physician, David Elkayam, M.D., and examining psychologist, Tedd Judd, Ph.D.; (2) in failing to properly consider all of the limitations imposed by plaintiff's severe impairments; and (3) in finding plaintiff to be capable of returning to her past relevant work. For the reasons set forth below, the Court agrees the ALJ erred in evaluating Dr. Judd's opinion and in finding plaintiff to be capable of performing her past relevant work, and thus in determining plaintiff to be not disabled. Accordingly, the Court finds that defendant's decision should be reversed on this basis, and that this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991)

ORDER - 2

("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.   The ALJ's Evaluation of Dr. Judd's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

ORDER - 4

those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

With respect to the opinion evidence from Dr. Judd, the ALJ found as follows:

> The record contains interrogatories that were completed in February 2013 by examining psychologist Tedd Judd, PhD, who opined that the claimant's depression was primarily reactive to unemployment and her inability to find a job. (Exhibit 23F/4). He further opined that the claimant's mental impairments would cause her to have difficulties in social functioning as well as inattention. (Exhibit 23F/5). This opinion is given little weight as it is based upon a one-time evaluation of the claimant that occurred in August 2012, six months prior to completing these interrogatories. (Exhibit 15F). Moreover, Dr. Judd's opinion is inconsistent with his previous report from August 2012, which revealed that the claimant's working memory is superior and her information processing speeds are within the average range. It was also noted that her word memory is superior. (Exhibit 15F/9). In fact, in August 2012 Dr. Judd opined in that report that the claimant would be a candidate for vocational rehabilitation once her migraines headaches symptoms are addressed. (Exhibit 15F/11). There was no mention of the effect of her mental impairments. Finally, it is also worth noting that there is a page missing from Dr. Judd's August 2012 report so that it does not contain any diagnoses of the claimant nor does it offer any opinion. (Exhibit 15F/10-11). This renders his opinion in the interrogatories regarding the claimant's depression and ADHD symptoms less reliable as it is unclear from the record whether Dr. Judd diagnosed the claimant with these impairments.

AR 19. Plaintiff argues the ALJ erred in so finding. The Court agrees.

First, the mere fact that an examining medical source conducts a "one-time evaluation" is not itself a valid reason for rejecting that source's opinion, given that in general most examining

ORDER - 5

medical sources only evaluate a claimant on one occasion, and that the Commissioner herself on many occasions has relied on such one-time evaluations to support a finding of non-disability. Further, it is not so clear that a period of six months between an evaluation and an opinion based on that evaluation is sufficiently large to call the opinion into question. At the very least, the ALJ offered no explanation as to how such is the case here.

Second, as plaintiff points out there is not necessarily any inconsistency between testing indicating superior memory and average information processing speeds and Dr. Judd's opinion that plaintiff was significantly limited in terms of social functioning and inattention. That is, the fact that an individual has no issues with memory or information processing does not at all necessarily indicate that person has no problems with attention or social functioning. The Court also notes that Dr. Judd's evaluation report contains additional findings that certainly could be supportive of the functional limitations he assessed. For example, in regard to attention testing also suggested "some tendency toward information overload" and revealed plaintiff to be "impaired on multitasking." AR 476-77. As for possible impact on social functioning, the mental status examination Dr. Judd performed does contain some abnormal findings, such as restricted range of affect and generally depressed appearance. *See* AR 475.

Third, and finally, as plaintiff again points out the lack of any "mention of the effect of her mental impairments" by Dr. Judd and the missing evaluation report page, may actually have something to do with each other. That is, the missing page indeed may contain the diagnoses Dr. Judd assessed, along with possible further findings or opinions concerning the effect or impact of those impairments on plaintiff's functional capabilities. Nor is there any indication as to why the ALJ made no attempt to secure the missing page. To that extent, therefore, the Court agrees with plaintiff that the ALJ erred in failing to uphold his duty "to fully and fairly develop the record."

ORDER - 6

*Tonapetyan*, 242 F.3d at 1150.

Defendant argues there is no error here, because the ALJ found the record to be adequate to evaluate plaintiff's disability claim. *See Mays v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (duty to further develop record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). But the ALJ' own findings concerning the evaluation report indicates he was aware of ambiguity of the evidentiary support for Dr. Judd's opinion, as the ALJ specifically noted that it was "unclear" as to whether Dr. Judd had diagnosed plaintiff with any mental impairments that might have formed the basis for the functional limitations he assessed. Had the ALJ obtained the missing report page, he may very well have found the diagnostic and/or other evidentiary support he found to be absent. In that case, the ALJ might have come to a different conclusion regarding Dr. Judd's opinion, especially since the other reasons the ALJ gave for rejecting it lack validity.

II.     The ALJ's Step Four Determination

At step four of the Commissioner's sequential disability evaluation process,[2] the ALJ found plaintiff to be capable of performing her past relevant work both as a general office clerk and as a food and beverage order clerk. *See* AR 21. The ALJ explained his step four finding as follows:

> At the hearing, the vocational expert testified that the claimant had past relevant work as a general office clerk . . . and as a food and beverage order clerk . . . At the hearing, the claimant testified that both of these positions were performed for a period of five years during which time she owned a pizza restaurant with her husband. While there is no evidence of earnings in the record, the claimant testified that all of the income from the restaurant was reported on her husband's records only. On a work history report that was completed by the claimant, she indicated that most of her time was spent

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.*

ORDER - 7

> in the office doing paperwork, but that she also delivered pizzas and took phone orders as well. (Exhibit 3E/4). She reported that she did this work from August 1995 to September 1999 and that her pay varied. (Exhibit 3E/1, 4). Thus, I find that this constitutes past relevant work. Accordingly, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as it was actually and generally performed.

*Id.* Plaintiff argues the ALJ erred in finding her to be capable of performing her past relevant work. Again, the Court agrees.

Plaintiff has the burden to show she is unable to perform her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." *Id.* at 844-45 (quoting 20 C.F.R. § 416.920(e)). To be found not disabled at step four, the claimant must able to perform either "[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* at 845. "This requires specific findings" on the part of the ALJ "as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* (citing Social Security Ruling ("SSR") 82-62, 1982 WL 31386).

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work, with is defined as lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, standing and/or walking up to two hours and sitting up to six hours all within an eight hour work day with normal breaks. . . . In addition, the claimant can frequently stoop, crouch, kneel, balance, and crawl. She can also frequently climb ramps, stairs, ladders, ropes, and scaffolds. The claimant can handle frequent interaction with co-workers, supervisors, and the general public.**

ORDER - 8

AR 17 (emphasis in original). First, it should be noted that given the ALJ's errors in evaluating the opinion evidence from Dr. Judd, the above RFC assessment cannot be said to completely and accurately describe all of plaintiff's mental functional limitations at this time.[3] Thus, on this basis alone the Court finds the ALJ's step four determination to be in error, given that it is based on an erroneous RFC assessment.

Second, as plaintiff notes, the ALJ failed to describe the physical and mental demands of her past relevant work. Defendant argues the ALJ accepted plaintiff's testimony that she and her husband operated a pizza store franchise and considered her work history report, in which she indicated having spent most of her time in the office doing paperwork but also delivering pizzas and taking phone orders. *See* AR 21, 220. But neither the testimony the ALJ cites nor the work history report itself indicates the actual *physical* and *mental* demands of plaintiff's past relevant work – as opposed to the number of hours work or nature of the tasks performed – and the ALJ made no further attempt to determine those demands. The ALJ thus erred in finding plaintiff to be capable of performing her past relevant work as it was actually performed.

Third, again as plaintiff notes, she did not testify or report that she performed the two separate jobs of general office clerk and food and beverage order clerk while she owned a pizza restaurant with her husband, but that her job during that time was co-owner of that business. *See* AR 50-53, 217, 220. Further, although the vocational expert did testify that plaintiff performed the general office clerk and food and beverage order clerk as part of the pizza restaurant business

---

[3] If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four of that process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.* Residual functional capacity is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.*

ORDER - 9

– and that she also performed the general office clerk "as a standalone" job (AR 63) – it is not at all clear upon what evidence in the record that testimony was based. To the extent the vocational expert, and thus the ALJ, divided the job of pizza restaurant co-owner or its equivalent into the "particular task[s] associated with" it by separating it into the jobs of general office clerk and food and beverage clerk and then determining plaintiff's ability to perform those jobs, this was error. *See Valencia v. Heckler*, 751 F.2d 1082, 1087 (9th Cir. 1985).[4]

III.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

---

[4] In *Valencia*, the Commissioner argued that tomato sorting, "one of the many tasks" the claimant performed as a farm worker, constituted past relevant work. *Id.* at 1086. The Ninth Circuit rejected this argument, explaining that because the evidence in the record reflected that even when the majority of the claimant's time was spent sorting tomatoes, she "also performed the other tasks customarily performed by agricultural workers, including hoeing and harvesting the fields." *Id.* The Ninth Circuit went on to state that:

> Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's "past relevant work" according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.

*Id.* The Ninth Circuit concluded by stating that "the [Social Security Act] and regulations direct the [Commissioner] to first determine whether a disability claimant can perform his past job or occupation *before* examining whether the skills and training acquired by the claimant through his previous work experience have equipped him to undertake other similar or related jobs," and therefore that "[w]here an individual cannot perform any of his previous jobs, but only one or more tasks associated with those jobs," the step four determination "must be resolved in the claimant's favor." *Id.* at 1086-87 (emphasis in original). In this case, while the vocational expert and ALJ did not parse out specific work-related tasks, they essentially appear to have done just that by dividing the job of pizza co-owner into the jobs of general office clerk and beverage order clerk, given that there is no evidence that plaintiff actually performed those jobs. Nor is it clear the extent to which any or all of the tasks required to perform those two separate jobs also are required to perform the job of pizza restaurant co-owner, or whether they fully and adequately encompass all of the tasks that a pizza restaurant co-owner does.

ORDER - 10

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record, plaintiff's RFC and her ability to perform her past relevant work, remand for further consideration of these issues – as well as, if necessary, the issue of whether plaintiff is capable of performing other jobs existing in significant numbers in the national economy[5] – is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 13th day of August, 2015.

Karen L. Strombom
United States Magistrate Judge

---

[5] If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett*, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e).

ORDER - 11